IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHELLE H.,[1]                                           No. 3:20-cv-00447-HZ

                          Plaintiff,                      OPINION & ORDER

           v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

                          Defendant.

Kevin Kerr
Schneider Kerr Robichaux
P.O. Box 14490
Portland, OR 97293

           Attorney for Plaintiff

Renata Gowie
Assistant United States Attorney
District of Oregon
1000 SW Third Avenue, Suite 600
Portland, OR 97204

---

[1] In the interest of privacy, this Opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this Opinion uses the same designation for a non-governmental party's immediate family member.

Jacob Phillips
Social Security Administration
Office of the General Counsel
701 Fifth Avenue, Suite 2900 M/S 221A
Seattle, WA 98104

      Attorneys for Defendant


HERNÁNDEZ, District Judge:

      Plaintiff Michelle H. brings this action seeking judicial review of the Commissioner's final decision to deny supplemental security income ("SSI"). This Court has jurisdiction pursuant to 42 U.S.C. § 405(g) (incorporated by 42 U.S.C. § 1383(c)(3)). The Court reverses the Commissioner's decision and remands this case for further administrative proceedings.

## PROCEDURAL BACKGROUND

      Plaintiff applied for SSI on September 21, 2016, alleging an onset date of September 1, 2016. Tr. 72. Her application was denied initially and on reconsideration. Tr. 99, 108.

      On October 18, 2018, Plaintiff appeared with counsel for a hearing before an Administrative Law Judge ("ALJ"). Tr. 51. On January 9, 2019, the ALJ found Plaintiff not disabled. Tr. 29. The Appeals Council denied review. Tr. 1.

## FACTUAL BACKGROUND

      Plaintiff alleges disability based on psychological impairments. Tr. 178. At the time of her alleged onset date, she was 51 years old. Tr. 73. She has a tenth-grade education and no past relevant work experience. Tr. 27, 179.

## SEQUENTIAL DISABILITY EVALUATION

      A claimant is disabled if they are unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C.

§§ 423(d)(1)(A), 1382c(a)(3)(A). Disability claims are evaluated according to a five-step procedure. *See Valentine v. Comm'r*, 574 F.3d 685, 689 (9th Cir. 2009) (in social security cases, agency uses five-step procedure to determine disability). The claimant bears the ultimate burden of proving disability. *Id.*

In the first step, the Commissioner determines whether a claimant is engaged in "substantial gainful activity." If so, the claimant is not disabled. *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987); 20 C.F.R. §§ 404.1520(b), 416.920(b). In step two, the Commissioner determines whether the claimant has a "medically severe impairment or combination of impairments." *Yuckert*, 482 U.S. at 140–41; 20 C.F.R. §§ 404.1520(c), 416.920(c). If not, the claimant is not disabled. *Id.*

In step three, the Commissioner determines whether the claimant's impairments, singly or in combination, meet or equal "one of a number of listed impairments that the [Commissioner] acknowledges are so severe as to preclude substantial gainful activity." *Yuckert*, 482 U.S. at 141; 20 C.F.R. §§ 404.1520(d), 416.920(d). If so, the claimant is conclusively presumed disabled; if not, the Commissioner proceeds to step four. *Yuckert*, 482 U.S. at 141.

In step four, the Commissioner determines whether the claimant, despite any impairment(s), has the residual functional capacity (RFC) to perform their "past relevant work." 20 C.F.R. §§ 404.1520(e), 416.920(e). If the claimant can perform past relevant work, the claimant is not disabled. If the claimant cannot perform past relevant work, the burden shifts to the Commissioner. In step five, the Commissioner must establish that the claimant can perform other work. *Yuckert*, 482 U.S. at 141–42; 20 C.F.R. §§ 404.1520(e)–(f), 416.920(e)–(f). If the Commissioner meets their burden and proves that the claimant can perform other work that

exists in the national economy, then the claimant is not disabled. 20 C.F.R. §§ 404.1566, 416.966.

## THE ALJ'S DECISION

At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity after her alleged onset date. Tr. 22. Next, at steps two and three, the ALJ determined that Plaintiff has the following severe impairments: "anxiety, depression, and posttraumatic stress disorder (PTSD)." Tr. 22. However, the ALJ determined that Plaintiff's impairments did not meet or medically equal the severity of a listed impairment. Tr. 23. At step four, the ALJ concluded that Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels with the following nonexertional limitations:

> She is limited to performing simple routine work in a workplace with no more than occasional workplace changes. She can have occasional[] contact with supervisors and occasional, superficial contact with coworkers, with no teamwork. She also can have no public contact.

Tr. 24. The ALJ determined that Plaintiff has no past relevant work. Tr. 27. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform, such as "floor cleaner," "lot attendant," and "dishwasher." Tr. 28. Thus, the ALJ concluded that Plaintiff is not disabled. Tr. 28–29.

## STANDARD OF REVIEW

A court may set aside the Commissioner's denial of benefits only when the Commissioner's findings "are based on legal error or are not supported by substantial evidence in the record as a whole." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted). "Substantial evidence means more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted). The court considers the record as a

whole, including both the evidence that supports and detracts from the Commissioner's decision. *Id.*; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "Where the evidence is susceptible to more than one rational interpretation, the ALJ's decision must be affirmed." *Vasquez*, 572 F.3d at 591 (internal quotation marks and brackets omitted); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) ("Where the evidence as a whole can support either a grant or a denial, [the court] may not substitute [its] judgment for the ALJ's") (internal quotation marks omitted).

## DISCUSSION

Plaintiff's sole argument is that the ALJ erred in giving partial weight to the opinion of examining psychologist, Brian C. Tucker, Psy.D. There are three types of medical opinions in social security cases: those from treating, examining, and non-examining doctors. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If no conflict arises between medical source opinions, the ALJ generally must accord greater weight to the opinion of an examining physician over that of a reviewing physician, *id.*, and more weight is given to an examining physician than to a nonexamining physician, *see Garrison v. Colvin,* 759 F.3d 995, 1012 (9th Cir. 2014). If a treating or examining physician's opinion is not contradicted by another physician, the ALJ may reject it only for clear and convincing reasons. *Id.*; *Widmark v. Barnhart*, 454 F.3d 1063, 1067 (9th Cir. 2006). Even if one physician is contradicted by another physician, the ALJ may not reject the opinion without providing specific and legitimate reasons supported by substantial evidence in the record. *Orn v. Astrue,* 495 F.3d 625, 632 (9th Cir. 2007); *Widmark*, 454 F.3d at 1066. And "[t]he Commissioner may reject the opinion of a non-examining physician by reference to specific evidence in the medical record." *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir. 1998).

Dr. Tucker conducted a psychological evaluation of Plaintiff in December 2016. Tr. 267–72. Dr. Tucker's assessment was based on Plaintiff's self-report, his own observations, and testing at the exam. Tr. 267–72. Plaintiff reported a history of mental illness to Dr. Tucker, some of which stems from abuse during her childhood. Tr. 268. Though her psychiatric treatment has been limited, Plaintiff reported a prior 14-month hospitalization at Oregon State Hospital in 2004 as well as a three-week hospitalization at age 13. Plaintiff was also incarcerated for some time. Tr. 269. At the time of the evaluation, Plaintiff was experiencing homelessness. Tr. 269.

Dr. Tucker observed that Plaintiff was guarded and her voice was terse, though she was also cooperative, forthcoming, and truthful in reporting her history and level of functioning. Tr. 269–70. Plaintiff reported being anxious and depressed, and Dr. Tucker observed that her affect and mood were consistent with that report. Tr. 270. He also noted that she was difficult to follow at times; preoccupied with safety and distrust of others; and struggled on various tests of abstraction, recall, fund of knowledge, concentration and attention, and judgment. Tr. 270. Dr. Tucker opined that Plaintiff had chronic post-traumatic stress disorder, generalized anxiety disorder, and moderate, recurrent major depressive disorder. Tr. 270. He also concluded that bipolar disorder, antisocial personality disorder, and borderline personality disorder should be ruled out. Tr. 271. He stated that her prognosis was guarded. Tr. 271. Dr. Tucker opined that Plaintiff had some degree of limitation in her activities of daily living; social functioning; understanding and memory; and concentration, persistence, and pace. Tr. 271.

The ALJ gave Dr. Tucker's opinion limited weight. Tr. 27. First, the ALJ found that "[s]ome of the opinions are confusing and appear contradictory." Tr. 27. To illustrate, the ALJ offered the following examples:

> [F]inding she would not be able to remember, but would be able to understand one to two step tasks consistently, and then subsequently finding her ability to

> remember and understand would decline with increased complexity, seems to suggest the "not" before remember may have been a transcription error. Additionally, his finding she would not be able to sustain concentration or persist, but she could maintain a work pace, seems contradictory.

Tr. 27. In addition, the ALJ found that Dr. Tucker's opinion that Plaintiff would not be able to sustain concentration or interact appropriately was inconsistent with Plaintiff's presentation at the emergency room and the hearing. Tr. 27.

The ALJ did not err in rejecting certain limitations because parts of Dr. Tucker's opinion were confusing and potentially contradictory. It is difficult to discern what, exactly, Plaintiff's limitations are based on Dr. Tucker's opinion. As the ALJ points out, Dr. Tucker finds that she cannot remember but can understand instructions for one to two step tasks. Tr. 271 ("Claimant would not be able to remember and would be able to understand instructions in order to carry them out as described above."). And he finds that she can sustain concentration and persist, but she cannot maintain a work pace. Tr. 271 ("Claimant would not be able to sustain concentration, would not be able to persist, and would be able to maintain a work pace[.]"). It is unclear whether there was a typographical error—an accidentally added or omitted "not"—or whether these were the intended findings. But in any event, it is difficult to discern Plaintiff's limitations regarding understanding, memory, concentration, persistence, and pace based on Dr. Tucker's opinion. Accordingly, the ALJ did not err in rejecting these limitations.

Because of these ambiguities in Dr. Tucker's opinion, however, the ALJ lacked sufficient evidence to render a decision. *See Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001) ("Ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to 'conduct an appropriate inquiry.'"). There are no other medical records in this case that address Plaintiff's mental limitations. Indeed, the only other records are two emergency department records for visits from October 2016

related to a urinary tract infection and muscle strain. As the Commissioner points out, nonexamining physician Ben G. Kessler, PsyD, completed an assessment of Plaintiff. *See* Tr. 77–82. But this appears to have been based largely on the confusing and inconsistent examination by Dr. Tucker as no other records of mental health treatment exist and the remaining medical evidence is quite limited.[2] *See* Tr. 80–82. With such limited and ambiguous medical evidence in the record, the Court cannot conclude that the ALJ's decision was based on substantial evidence. *See Tonapetyan*, 242 F.3d at 1150–51 (finding that the ALJ erred in relying on the opinion of a medical expert who expressed concern over the lack of a complete record and recommended a more detailed report be obtained). *Cf. Ford v. Saul*, 950 F.3d 1141, 1156 (9th Cir. 2020) (finding the ALJ's duty to develop the record was not triggered by the ALJ's own finding that a physician's opinion was inadequately explained where the ALJ had "years of [the plaintiff's] mental health records and multiple opinions from non-examining psychiatrists to inform her decision"). Thus, the ALJ erred.

In addition, the ALJ erred in rejecting Dr. Tucker's opinion that Plaintiff cannot interact appropriately in the workplace because it was inconsistent with Plaintiff's presentation at the hearing and the emergency room. As a preliminary matter, the Court notes that the ALJ does not identify what about Plaintiff's behavior at the hearing or in the emergency room specifically conflicted with Dr. Tucker's opinion. *See* Tr. 27. Elsewhere, however, the ALJ explains that

---

[2] The Court also notes that Dr. Kessler's opinion is itself confusing. In one part of his evaluation, he states that he gave Dr. Tucker's opinion great weight and that "based on his objective findings, the claimant would not be able to sustain SGA." Tr. 80. Elsewhere, however, Dr. Kessler make findings that would suggest otherwise. *Compare* Tr. 80 ("[Claimant] is capable of understanding/remembering simple instructions.") *with* Tr. 271 ("Claimant would not be able to remember and would be able to understand instructions[.]"); *see also* Tr. 78 ("Her general presentation does suggest some interpersonal problems but nothing that would suggest an inability to sustain a normal work day/week as Dr. Tucker suggests.").

Plaintiff could interact appropriately with male medical providers in the emergency room despite her testimony that she was frightened by men. Tr. 25. The ALJ also notes observations from providers that she was cooperative, in no acute distress, and had appropriate mood and affect. Tr. 252–62. But these limited interactions in the emergency room do not undermine Dr. Tucker's assessment. As to Plaintiff's social functioning, Dr. Tucker opined that:

> Claimant would have problems responding appropriately to supervisions [sic], working with or near other without being distracted, getting along with co-workers, initiating interpersonal contact, responding appropriately to negative feedback, maintaining a relationship with supervisors, and asking simple questions or assistance. As a result of her mental health condition, the Claimant would not be able to engage in socially appropriate interactions in the workplace.

Tr. 271. These findings are based on Dr. Tucker's examination of Plaintiff and Plaintiff's reported psychological history, including having involuntary and intrusive memories of her childhood trauma, intense psychological distress at exposure to reminders of her trauma, avoidance behaviors, persistent and exaggerated negative beliefs about others and the world, negative emotional states, irritability and angry outbursts, hypervigilance, and feeling easily threatened. Tr. 268. In other words, the identified limitations do not appear to be based solely on her inability to be around men. And Dr. Tucker's opinion—that Plaintiff would have difficulty working with co-workers and supervisors—is not inconsistent with Plaintiff's ability to seek and receive emergency medical treatment twice and appear at a hearing. Accordingly, the ALJ erred in giving little weight to Dr. Tucker's opinion as to Plaintiff's social functioning.

In this case, remand for further proceedings is appropriate. As described above, Dr. Tucker's opinion is incomplete as to the extent of her limitations in understanding and remembering and in her ability to maintain concentration, persistence, and pace. The ALJ must fully develop the record on this point. *See Tonapetyan*, 242 F.3d at 1150 ("The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting

questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record."). Further, it is unclear from the Vocational Expert's testimony whether Plaintiff's difficulty in social functioning would preclude all work. *Compare* Tr. 65–68 (VE identifying jobs where "you work pretty much by yourself with hardly anybody around and independent of other workers") *with* Tr. 271 (Dr. Tucker finding "[c]laimant would not be able to engage in socially appropriate interactions in the workplace," including working with supervisors.). Accordingly, the Court reverses the decision of the Commissioner and remands this case for further proceedings.

## CONCLUSION

Based on the foregoing, the Commissioner's decision is REVERSED and REMANDED for further administrative proceedings.

IT IS SO ORDERED.

DATED:____February 7, 2022_____.

_____
MARCO A. HERNÁNDEZ
United States District Judge